

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 12, 2024

<u>VIA ECF</u>

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     **Re:**    *United States v. Jaime Rivera*, 24 Cr. 206 (JMF)

Dear Judge Furman:

     The Government respectfully submits this letter in advance of the sentencing for defendant Jaime Rivera in the above-referenced matter, which is currently scheduled for November 19, 2024. For the reasons set forth below, the Government respectfully submits that a sentence of imprisonment near the top of the applicable U.S. Sentencing Guidelines (the "Guidelines") range of 18 to 24 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

     **I.**    **Background**

     NYCHA is the largest public housing authority in the country. It provides housing to low- and moderate-income New York City residents and is funded in large part from the U.S. Department of Housing & Urban Development. (Presentence Report ("PSR") ¶ 10; *see generally* Dkt. 6 (background letter)). After many years of employment at NYCHA, from at least July 2015 through March 2020, the defendant served as an assistant superintendent and then superintendent at Lower East Side Consolidated, a NYCHA housing development located in Manhattan that also manages nearby Campos Plaza, another NYCHA property. (PSR ¶ 14). As a superintendent, the defendant was involved in awarding construction and repair jobs to contractors seeking to be hired for work at NYCHA properties. For jobs that were under a certain threshold (often referred to as "no-bid contracts"), the defendant could hire contractors directly without a competitive bid process or other oversight. (PSR ¶¶ 10-13). However, rather than awarding work to contractors based solely on merit, the defendant awarded no-bid contracts based on the payment of bribes.

     From at least March 2018 through at least March 2020, the defendant accepted multiple bribes from contractors who performed work for him in exchange for awarding no-bid contracts to those contractors. Specifically, the contractors each paid the defendant approximately $500 or $1,000 in cash for each no-bid contract that was received from the defendant. These no-bid contracts were each worth between $5,000 and $10,000. The contractors paid these bribes based on express requests from the defendant and based on the understanding that if they did not pay,

they would not be awarded additional no-bid contracts by the defendant for work at that housing development. (PSR ¶¶ 15-23, *see* Dkt. 1 (Compl.)). In total, the defendant accepted at least approximately 20 bribes totaling at least approximately $32,000 in exchange for awarding no-bid contracts or approving work worth a total value of approximately $160,000. (PSR ¶ 23).

The defendant was charged by complaint in connection with this conduct in early February 2024 and was arrested on February 6, 2024. (PSR ¶ 23).

The defendant's actions were part of a widespread culture of corruption at NYCHA. The Government charged 70 current and former NYCHA employees, including the defendant, with bribery and extortion offenses in a single, coordinated takedown. Although the majority of these defendants were charged separately, the charging instruments allege that these NYCHA employees received similar bribe amounts from contractors for no-bid contracts. In fact, the required bribe amount (typically between 10 or 20 percent of the contract's value) became well known among contractors because so many NYCHA employees were demanding payments for work. (*See* Dkt. 6 (background letter)).[1] In terms of extent of the defendant's criminal conduct, his total bribe amount falls in the heartland of the 70 former and current NYCHA employees who were charged in February 2024.

The impact of this corruption by former and current NYCHA employees was vast: collectively, the 70 defendants are alleged to have received more than $2 million in bribe or extortion payments from NYCHA contractors in exchange for awarding at least approximately $13 million in NYCHA contracts at approximately 96 developments in all five boroughs. (*Id.*).

## II.   The Defendant's Plea and Guidelines Range

The defendant was indicted in April 2024, (PSR ¶ 1), and discovery was produced. On August 8, 2024, the defendant pleaded guilty to Count One of the Indictment, receipt of a bribe by an agent of an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B). (PSR ¶ 5). Specifically, the defendant was charged with soliciting and accepting a total of at least $32,000 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth at least approximately $160,000. (PSR ¶ 2).

As set forth in the parties' plea agreement and confirmed in the Presentence Report, the defendant's base offense level is 14 pursuant to U.S.S.G. § 2C1.1(a)(1) because he was a public official, and that level is increased by six levels because the offense involved more than one bribe and the value of the bribe payments amounted to between $15,000 and $40,000. Assuming the defendant clearly demonstrates acceptance of responsibility, a three-level reduction will be warranted pursuant to U.S.S.G. § 3E1.1(a) and (b). A two-level reduction is also applied because

---

[1] To date, 44 defendants have pleaded guilty or are scheduled to plead guilty to felony charges, one defendant has been convicted of felony charges after trial, and nine defendants have pleaded guilty to misdemeanor charges.

the defendant has zero criminal history. Thus, the defendant's applicable offense level is 15. (PSR ¶¶ 5, 31-42).

The defendant has zero criminal history points and is therefore in Criminal History Category I. (PSR ¶¶ 5, 43-46).

Based on the above calculations, the defendant's Guidelines range is 18 to 24 months' imprisonment (the "Stipulated Guidelines Range"). (PSR ¶¶ 5, 85). At Guidelines level 15, the applicable fine range is $7,500 to $75,000. (PSR ¶ 93). The Probation Office recommends a sentence of 12 months and one day's imprisonment, three years of supervised release, and a $7,500 fine. (PSR at 26). The defendant requests a non-incarceratory sentence. (*See* Def. Mem.).

The defendant has agreed to pay $32,000 in restitution to NYCHA and to forfeit $32,000 in illegal proceeds. (PSR ¶¶ 95, 97).

### III.   Discussion

#### A.   Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant;
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. A Sentence of Imprisonment Near the Top of the Stipulated Guidelines Range Is Necessary in This Case

A sentence of imprisonment near the top of the applicable Guidelines range of 18 to 24 months' imprisonment would be sufficient, but not greater than necessary, to serve the purposes of sentencing in this case.

*First*, the seriousness of the defendant's conduct and the need to promote respect for the law support imposition of a substantial sentence of imprisonment. The defendant repeatedly betrayed his employer and abused the position of trust that he held, and ultimately betrayed the trust of the residents of the NYCHA developments for which he had responsibility, all in order to enrich himself. As a NYCHA superintendent, the defendant earned an annual salary of approximately $94,000, but the defendant nevertheless corrupted his position of authority for personal greed. (PSR ¶¶ 77). And the defendant's conduct was not aberrational or a momentary lapse in judgment; he engaged in this offense on a sustained basis, accepting $500 or $1,000 at a time repeatedly over the course of several years.

Courts in this District have repeatedly emphasized the harm that these bribery and corruption offenses cause. For example, Judge Caproni observed in sentencing another NYCHA employee that public corruption is "one of the most serious of all federal offenses" because "[t]his country cannot exist if the public does not trust that public officials are operating as servants of the people and not corruptly for their own personal gain." *United States v. Rupnarain*, No. 24 Cr. 125 (VEC), Dkt. 28 at 25 (S.D.N.Y. Aug. 5, 2024). Judge Cote, in sentencing a different NYCHA employee to 15 months' imprisonment for accepting approximately $6,000 in bribes, described the offense as "a real betrayal":

> You betrayed your employer, you betrayed the city, you betrayed the residents of the houses at which you worked. This was a corruption of your job and your duties. You were given responsibility and authority, and instead, you used that to get money you had no right to. And corruption is a corrosive, destructive issue. People need to have faith in their government. They need to have faith in their public housing that it's a community resource that can be used to support those in need.

*United States v. Figueroa*, No. 22 Cr. 605 (DLC), Dkt. 27 at 17 (S.D.N.Y. Feb. 9, 2023).

As another example, Judge Oetken observed in sentencing a different NYCHA defendant to five months' imprisonment for taking $9,500 in bribes that:

> Because the conduct was so widespread within NYCHA, one might look at it, although superficially, like it was sort of routine behavior and therefore almost innocuous, but it was not innocuous or innocent, and it's important that we all understand that. It's the kind of conduct that undermines faith in our government and in institutions that are supposed to help people. It is criminal conduct that is hard to detect. It's more subtle than some others forms of criminal conduct, but there are real victims; not just NYCHA but sort of the public's faith in the government. It creates cynicism, this sort of corruption.

*United States v. Escobar*, No. 24 Cr. 213 (JPO), Dkt. 23 at 25-26 (S.D.N.Y. July 25, 2024).

And similarly, in a recent bribery case involving corrupt Drug Enforcement Administration ("DEA") officials, Judge Oetken called bribery of public officials "insidious [because] it undermines the public's faith in our system . . . . There are a lot of countries around the world where this sort of corruption is routine, it's part of life, everyone expects it. One of the things that sets our country apart, at least in our aspirations and our ideals, is to be free of this sort of corruption." *United States v. Costanzo*, No. 22 Cr. 281 (JPO), Dkt. 253 at 54 (S.D.N.Y. Apr. 24, 2024).

In addition to undermining the public's trust in NYCHA, the conduct damaged NYCHA's mission and, potentially, the wellbeing of its residents. Rather than select contractors based on the quality of their work and the price they offered, the defendant chose contractors based on his own personal greed. A sentence near the top of the Stipulated Guidelines Range is needed to appropriately punish the defendant's repeated betrayal of public trust for personal gain and to promote respect for the law. *See Rupnarain*, Dkt. 28 at 26 ("I think society expects public corruption to be treated seriously and for corrupt officials to be punished.").

*Second*, a substantial incarceratory sentence is vital to deter others who may seek to engage in similar schemes—a factor that would not be adequately addressed with a non-incarceratory sentence. By charging 70 defendants with this conduct, the Government sought to send a real message that this type of behavior will not be tolerated. However, this message is likely to ring hollow if these defendants receive non-incarceratory sentences for years-long and repeated abuses of their positions of responsibility over the safety and well-being of some of the most vulnerable New Yorkers.

Prior arrests of individuals engaged in this type of bribery scheme have not ended this type of conduct. In fact, the defendant himself continued to accept bribes even after the well-publicized arrests of nine contractors who were charged with bribing NYCHA superintendents in Brooklyn

in September 2021.[2] As courts in this Circuit have recognized, "[t]he need for general deterrence is particularly acute in the context of white-collar crime." *United States v. Johnson*, No. 16 Cr. 457 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018). Many other individuals—like the defendant—hold similar positions of public trust, have the opportunity to commit similar offenses, and face similar temptations to betray their offices, and so a substantial term of imprisonment is needed to deter these individuals from making the same choices the defendant did. *Cf. United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004) (discussing particular need to deter financial institution employees from breaching trust of employer by engaging in frauds). The need for deterrence is also particularly acute for crimes that are difficult to detect and punish, like bribery offenses often are. *See Rupnarain*, Dkt. 28 at 29 (noting that "these sorts of schemes are very hard to catch," and "because people know they're hard to catch, it's got to be that the punishment is sufficiently severe that people will say, I'm not going anywhere close to that because I know what happens to even good people"); *accord United States v. Zukerman*, 897 F.3d 423, 430 (2d Cir. 2018) (general deterrence considerations "argue for punishing more heavily those offenses that are either lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it"). Any sentence imposed in this case must send a message to those who seek to illegally profit from their NYCHA positions—or other positions of trust in local, state, or federal government agencies—that such conduct will not be tolerated and that serious consequences, including incarceration, will result.

*Third*, while the defendant points to his long employment history at NYCHA, (*see* Def. Mem. 5-7), the Court should reject this as a basis for a non-incarceratory sentence. The defendant's history of meritorious service does not distinguish him from any other of the 70 defendants charged with taking bribes while at NYCHA or individuals who commit bribery generally. It is precisely by virtue of a history of service that bribery defendants are generally able to obtain the position of public trust that they then, in turn, exploit and use to solicit bribes. *See United States v. Fishman*, 631 F. Supp. 2d 399, 403 (S.D.N.Y. 2009). In other words, an otherwise unblemished work history is often part and parcel of bribery and does not take the defendant out of the heartland of bribery offenses or defendants. In fact, it is precisely what is so concerning about the defendant's conduct: by virtue of his long employment and service, he was entrusted with a position of privilege and responsibility and chose to betray that position on multiple occasions by using it to his own advantage. The Court should not grant leniency based on the same history of service that laid the foundation for the defendant's crimes. Similarly, the defendant's lack of criminal history is already reflected in his Guidelines range. Not only was the defendant placed in Criminal History Category I based on his zero-point offender status, but he also received a two-point reduction in offense level.

*Fourth*, the Government submits that a sentence near the top of the applicable Guidelines range is appropriate considering relative culpability and the sentences that have been imposed in this District on other NYCHA employees who pleaded guilty to accepting bribes in exchange for awarding no-bid repair contracts. A chart of the applicable Guidelines ranges and sentenced

---

[2] *See* NBC New York, "9 Contractors Charged in 'Brazen' NYCHA Kickback Scheme: Brooklyn DA" (Sept. 20, 2021), https://www.nbcnewyork.com/news/local/crime-and-courts/contractors-expected-to-be-charged-in-alleged-nycha-kickback-scheme-sources/3280939.

imposed on the defendants who have been sentenced on felony convictions so far is attached hereto as Exhibit A.[3] Indeed, the need to avoid unwarranted sentencing disparities weighs heavily in favor of imposing a substantial incarceratory sentence. *See, e.g.*, *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (explaining that this factor refers to comparing defendant to defendants in other cases who are similarly situated and committed similar offenses). Indeed, the defendant is one of the first defendants to be sentenced who did not waive indictment and discovery, but rather proceeded with receiving and reviewing discovery—as is his right. The Government in no way suggests penalizing the defendant for exercising his rights. But it is important context when evaluating the sentences imposed on the other defendants listed in Exhibit A that the vast majority of those sentences included additional leniency in recognition of those defendants' unusually early acceptance of responsibility. The defendant's acceptance of responsibility should be acknowledged—as it already has in calculation of the Stipulated Guidelines Range—but he is not deserving of the *extra* consideration that the vast majority of the other defendants were.

The defendant's arguments in favor of a non-incarceratory sentence fall far short of the mark. While the Government understands that every defendant stands before the Court for sentencing as an individual, nothing about the defendant's circumstances as highlighted in his submission removes him from the heartland of cases that the Sentencing Guidelines were intended to capture, nor do they differentiate him in any way from the majority of the other NYCHA superintendents who have been charged in this case, most of whom have been sentenced to significant terms of incarceration. The defendant's one-to-one comparison to one of the few defendants who received non-incarceratory sentences is flawed. Each of those defendants had unique mitigating circumstances, including special needs dependents who would suffer serious collateral consequences from those defendants' absences (with one exception, Nirmal Lorick, whose sentence the Government strongly disagrees with). In short, the Government sees no individualized reason for a downward variance in this case and notes that a sentence below that which the vast majority of other defendants received—where those defendants waived indictment and discovery and this defendant did not—would create an unwarranted sentencing disparity.

Finally, the Government notes that the Probation Office has determined that the defendant has the financial ability to pay a fine. The Court should, accordingly, impose a fine at the bottom of the Guidelines range of $7,500, as recommended by the Probation Office. U.S.S.G. § 5E1.2(a) "requires a district court to 'impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.'" *United States v. Glick*, 142 F.3d 520, 528 (2d Cir. 1998) (citation omitted). In assessing an appropriate fine, the sentencing court must consider certain factors, such as the defendant's income, earning capacity, and financial resources. *Id.* These factors are relevant "only to the amount of the fine, rather than the decision whether to impose a fine." *United States v. Corace*, 146 F.3d 51, 56 (2d Cir. 1998). Here, a fine at the bottom of the Guidelines range is reasonable and appropriate, as the Probation Office has determined that the defendant has not satisfied his "burden to show indigence" now or in the future. *Id.*

---

[3] Exhibit A does not include those cases in which the Government has agreed to a misdemeanor disposition.

### IV.     Conclusion

For the reasons set forth above, the Court should impose a sentence of imprisonment near the top of the applicable Guidelines range of 18 to 24 months' imprisonment, as well as the agreed-upon restitution and forfeiture.[4,5]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by:           /s/
Jerry Fang / Jacob R. Fiddelman / Meredith Foster /
Catherine Ghosh / Sheb Swett
Assistant United States Attorneys
(212) 637-2584/-1024/-2310/-1114/-6522

cc:    Ken Womble, Esq.
       Keith White, Esq.

---

[4] To the extent that the Court is inclined to sentence the defendant to a non-incarceratory sentence, the Government requests that the Court sentence the defendant to probation instead of supervised release.

[5] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).